2003 ME 64

**TOWN OF JAY**

v.

**ANDROSCOGGIN ENERGY,
LLC et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2003.
Decided: May 1, 2003.

Gerald F. Petruccelli (orally), Petruccelli, Martin & Haddow, L.L.P., Portland, for plaintiff.

Patrick J. Scully (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for Androscoggin Energy, LLC, defendant.

G. Steven Rowe, Attorney General, Carol A. Blasi, Asst. Attorney General (orally), Gerald Reid, Asst. Attorney General, Augusta, for Board of Environmental Protection, defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] The Town of Jay appeals from a judgment of the Superior Court (Kennebec

County, *Marden, J.*) affirming a decision of the Board of Environmental Protection affirming the Department of Environmental Protection's grant of a property tax exemption to Androscoggin Energy, LLC, pursuant to 36 M.R.S.A. § 656(1)(E)(2) (1990), for Androscoggin Energy's dry low nitrogen oxide combustion systems (collectively, the DLN System). The Town contends that the Board erred as a matter of law when it concluded that the DLN System (1) fits within the statutory definition of a "facility," (2) serves a pollution control function, and (3) was installed for the primary purpose of pollution control. We affirm the court's judgment.

## I. CASE HISTORY

[¶ 2] Androscoggin Energy owns and operates a gas-fired co-generation plant in the Town of Jay. Located at the International Paper Mill (IP), the plant produces steam for sale to IP, and electricity for sale to IP and the regional electricity market. Androscoggin Energy is partially owned by Wisvest, an affiliate of Wisconsin Electric Power Company, which contributed three combustion turbines in exchange for an equity interest in Androscoggin Energy. The turbines were manufactured prior to 1994 for a paper mill project in Wisconsin that was later cancelled.

[¶ 3] Town and state environmental regulations require that all new energy generation facilities be built in accordance with then-current Best Available Control Technology (BACT). Jay, Me., Environmental Control and Improvement Ordinance § 13–303(3)(d) (Nov. 25, 1996); Me. Dep't Envtl. Prot. Reg. Ch. 115, § 4(A)(4)(d) (Nov. 1996). To comply with BACT standards, Androscoggin Energy retrofitted the turbines with, among other things, the DLN System. The DLN System is a "front-end" system, meaning that it reduces the amount of pollutants created in the production process. In contrast, other retrofits to the turbines were "back-end" systems that control the emission of pollutants that are created in the combustion process.

[¶ 4] Androscoggin Energy built the plant in 1998 and 1999. The total cost of the plant was approximately $90 million, of which $3.9 million was for the retrofit of turbines. The plant added approximately $84.6 million to the Town's tax base; Androscoggin Energy pays the Town approximately $1.3 million in taxes every year.

[¶ 5] In January 2000, Androscoggin Energy applied to the Department of Environmental Protection (DEP) for a Tax Exemption Certification for the plant's air pollution control facilities, including the DLN System, pursuant to 36 M.R.S.A. §§ 656(1)(E)(2), 1760(30) (1990). In March 2002, the Commissioner certified the DLN System as a tax-exempt air pollution control facility. The Town appealed the certification to the Board of Environmental Protection and requested a public hearing, but did not request prehearing discovery beyond the exchange of prefiled expert witness testimony as agreed upon in a prehearing conference and memorialized by an order of the Board.

[¶ 6] The Board affirmed the certification after conducting a hearing on "(1) the function of the [DLN System] which Androscoggin Energy seeks property tax exemption for; and (2) the motivation of Androscoggin Energy for the installation of the [DLN System]." The Board concluded that the DLN System has multiple functions: "the primary functions are fuel delivery and combustion; the secondary function is industrial air pollutant reduction." The primary motivation behind installing the DLN System, the Board concluded, was "reduction of an industrial air pollutant." Finally, the Board concluded that the DLN System qualified as a tax-

exempt air pollution control facility because its primary purpose was "reducing, controlling, eliminating or disposing of industrial air pollutants."

[¶ 7] Pursuant to M.R. Civ. P. 80C, the Town appealed the Board's decision to the Superior Court. The Town filed a motion for additional evidence and discovery, arguing that it was entitled to discovery and additional testimony on the business relationships and motivations involved in the purchase of the DLN System. Additionally, the Town brought a declaratory judgment action and moved to consolidate the declaratory judgment and 80C actions. Androscoggin Energy and the Attorney General, representing the DEP, objected to both motions. After a hearing, the Superior Court denied the Town's motion for additional evidence and discovery. The Town then withdrew its motion to consolidate. On July 31, 2002, the Superior Court affirmed the Board's decision. This appeal followed.

## II.  DISCUSSION

### A.  Prehearing Discovery

[¶ 8] As a preliminary matter, the Town asserts that the Board abused its discretion when it restricted prehearing discovery to a requirement that the parties file their expert witnesses' testimony in writing prior to the hearing. The Town has not, however, identified any specific prejudice to it resulting from this restriction.

[¶ 9] Due process at the agency level does not require full trial-like procedures. *Fichter v. Bd. of Envtl. Prot.*, 604 A.2d 433, 437–38 (Me.1992). Moreover, "relaxation or modification of procedural rules by an administrative agency does not constitute reversible error absent 'a showing of injury or substantial prejudice.'" *In re Me. Clean Fuels, Inc.*, 310 A.2d 736, 744 (Me.1973) (quoting *Sun Oil Co. v. Fed. Power Comm'n*, 256 F.2d 233, 239 (5th Cir.1958), *cert. denied*, 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958)). The Town has neither demonstrated any injury from the procedure used, nor shown that it has been substantially prejudiced by the Board's procedure. We find no abuse of discretion in the prehearing procedure employed by the Board.

### B.  Standard of Review

[¶ 10] When the Superior Court acts in an intermediate appellate capacity to review an administrative agency's decision pursuant to M.R. Civ. P. 80C, we directly review the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Munjoy Sporting & Athletic Club v. Dow*, 2000 ME 141, ¶ 6, 755 A.2d 531, 536. The Town argues that the Board's interpretation of 36 M.R.S.A. § 656(1)(E)(2) constitutes an error of law. As the party attempting to vacate the agency's decision, the Town bears the burden of persuasion. *Int'l Paper Co. v. Bd. of Envtl. Prot.*, 1999 ME 135, ¶ 11, 737 A.2d 1047, 1050. We give deference to an agency's interpretation of a statute it administers, but we will not uphold the agency's interpretation "if the language and purpose of the statute and the agency's practice in a related case contradict it." *Id.* ¶ 13, 737 A.2d at 1050–51. We give a statute's words "their plain, common and ordinary meaning" unless the statute reveals a contrary legislative intent. *Id.* ¶ 16, 737 A.2d at 1051 (quoting *Murphy v. Bd. of Envtl. Prot.*, 615 A.2d 255, 258 (Me.1992)).

### C.  Whether the DLN System Qualifies as a "Facility"

[¶ 11] Section 656(1)(E)(2) exempts "air pollution control facilities" from prop-

erty taxation.[1] The Town first argues that the Board committed legal error when it concluded that the DLN System qualifies as a "facility" because the system is merely a collection of parts in the combustion turbines. "Facility" is statutorily defined as "any appliance, equipment, machinery, installation or structures installed, acquired or placed in operation primarily for the purpose of reducing, controlling, eliminating or disposing of industrial air pollutants." 36 M.R.S.A. § 656(1)(E)(2)(a). We have construed the term "facility" to include parts of a larger system of components. In *International Paper Co. v. Board of Environmental Protection*, we found that "the parts comprising the low NOx burners constitute only a small part of the fuel delivery system ... comprising the power boilers"; nevertheless, we held that the burners qualified as a "facility" for tax exemption purposes. 1999 ME 135, ¶¶ 32–33, 737 A.2d at 1054–55.

[¶ 12] Similar to its conclusion regarding the low NOx burner parts in *International Paper*, the Board in the present case found that the DLN System was "comprised of parts which change the fuel and air input mechanism in [Androscoggin Energy's] turbines in a manner that provides flame temperature consistency at levels which reduce NOx creation." The Board's conclusion that the DLN System is a "facility" is consistent with the statutory definition and our application of that definition in *International Paper*. Accordingly, the Board did not commit legal error when it

concluded that the DLN System qualifies as a "facility" potentially exempt from property taxation.

### D. Whether the DLN System Serves a Pollution Control Function

■ [¶ 13] The Town next argues that the Board erred as a matter of law in determining that the DLN System serves a pollution control function because, as a "front-end" pollution control measure, the DLN System's sole function is combustion, and reduction of NOx is merely an attribute of that function. We have already established, however, that facilities involved in the production process can also serve a pollution control function. *Int'l Paper*, 1999 ME 135, ¶¶ 32–33, 737 A.2d at 1054–55 (affirming the Board's finding that low NOx burners serve both production and pollution control functions); *see also Statler Indus., Inc. v. Bd. of Envtl. Prot.*, 333 A.2d 703, 707–08 (Me.1975) (recognizing that re-pulpers served a dual purpose and holding that a genuine issue of material fact existed regarding what portion served a primary purpose of pollution control).

[¶ 14] As in its finding in *International Paper*, the Board found in the present case that Androscoggin Energy's DLN System fulfills multiple functions: "assisting with fuel and air delivery into the turbine combustion chamber, combusting fuel, and reducing NOx creation." Consequently, the Board did not err as a matter of law when

---

1. Section 656(1)(E)(2) reads as follows:

   **(2)** Air pollution control facilities, certified as such by the Commissioner of Environmental Protection, and all parts and accessories thereof.

   As used in this paragraph, unless the context otherwise indicates, the following terms have the following meanings.

   **(a)** "Facility" means any appliance, equipment, machinery, installation or structures installed, acquired or placed in

   operation primarily for the purpose of reducing, controlling, eliminating or disposing of industrial air pollutants.

   Facilities such as air conditioners, dust collectors, fans and similar facilities designed, constructed or installed solely for the benefit of the person for whom installed or the personnel of that person shall not be deemed air pollution control facilities.

   36 M.R.S.A. § 656(1)(E)(2) (1990) (footnote omitted).

it determined that the DLN System serves a pollution control function. Because a facility can serve both production and pollution control functions, the distinction between "front-end" and "back-end" pollution control measures is inconsequential for purposes of determining whether a facility qualifies for a section 656 tax exemption.

### E. Whether the DLN System's Primary Purpose is Pollution Control

[¶ 15] Finally, the Town argues that the Board's determination that the DLN System's primary purpose was pollution control constituted legal error because its primary function was production and the Board's inquiry into Androscoggin Energy's motivation for installing the System was too narrow.

[¶ 16] The "primary purpose" determination mandated by section 656 works as follows: First, the Board must determine the functions of the facility. *Int'l Paper*, 1999 ME 135, ¶ 17, 737 A.2d at 1051–52. If the facility serves no pollution control function, then of course the Board must deny an exemption. *Id.* ¶ 22, 737 A.2d at 1053; *Ethyl Corp. v. Adams*, 375 A.2d 1065, 1077–78 (Me.1977). If the facility serves dual functions, however, then the Board must determine the facility's primary function. *Int'l Paper*, 1999 ME 135, ¶¶ 17, 22, 737 A.2d at 1051, 1053; *Statler*, 333 A.2d at 707–08. If the facility's primary function is pollution control, then the Board must grant an exemption. *See Statler*, 333 A.2d at 708. Conversely, if pollution control is merely a secondary function, then the Board must consider various factors, including taxpayer motivation, to determine the facility's primary purpose. *See Int'l Paper*, 1999 ME 135, ¶¶ 7, 22, 24, 737 A.2d at 1049, 1053 (vacating Board's denial of exemption for ECF system where Board had found system's "basic function" was production, and ruling that Board

needed to determine system's primary purpose). If the primary purpose for installing a facility is pollution control, then the Board must grant an exemption. *Id.* ¶ 17, 737 A.2d at 1051–52.

[¶ 17] The Town argues that the motivation inquiry should extend beyond the facility at issue to include "a comprehensive analysis of the [taxpayer's] business plan." Obviously, obtaining licensure required for the lawful operation of a new business is a primary motivation for most ventures. However, 36 M.R.S.A. § 656(1)(E)(2)(a) expressly limits the primary purpose analysis inquiry to the *facility* for which tax exemption is sought, and our interpretations of the primary purpose analysis conform to the narrowly focused scope of inquiry mandated by this statutory language. *See Int'l Paper*, 1999 ME 135, ¶ 22, 737 A.2d at 1053 (using the statutory language to define the scope of the primary purpose analysis); *Statler*, 333 A.2d at 706 (using the statutory language to limit exemption to facilities installed for primary purpose of pollution control). Contrary to the Town's position, section 656 does not compel DEP to analyze Androscoggin Energy's broader business interests served by its acquisition and integration of a new DLN System into a larger power generation plant to determine Androscoggin Energy's primary motivation. The Board's determination of primary motivation was appropriately specific to the particular *facility* for which the tax exemption was sought.

[¶ 18] Under the circumstances, the Board did not commit legal error in determining that the primary purpose of the DLN System is pollution control when this upgrade brought turbines already owned by Androscoggin Energy into compliance with environmental regulations.

The entry is:

Judgment affirmed.