STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-80

2005 MAY 27 P 3: 33

JUL 18 2005

Sablegolf, LLC and Sablots, LLC ,
Petitioners

v.                                                          ORDER

Maine Department of Environmental Protection
and Pinnacle Partners of Sable Oaks, LLC,
Respondents


    This case comes before the Court on Sablegolf, LLC and Sablots, LLC's Petition pursuant to M. R. Civ. P. 80C.

## FACTS

    Sablegolf, LLC and Sablots, LLC (Petitioners) seek review of the December 4, 2003 decision of the Board of Environmental Protection (the Board) affirming an April 24, 2003 decision by the Maine Department of Environmental Protection (MDEP) which approved the application of party-in-interest Pinnacle Partners (Pinnacle) of Sable Oaks, LLC, to construct an office building with parking at 1515 Sable Oaks Drive in South Portland. The proposed building will be next to the Sable Oaks Golf Course and within the Sable Oaks development. In addition to the construction, Petitioners claim that Pinnacle's plans call for the removal of most of the vegetation on the property, the fill of approximately 6, 732 square feet of wetlands to create parking and will create a storm run off system that will dump untreated water into the golf course's irrigation pond. Petitioners object to the construction of an office building with over 500 parking spots in

1

the middle of a golf course in the "campus-like" business park that Petitioners have worked to develop.

On April 24, 2003, the MDEP issued Site Law, National Resources Protection and Water Quality Certification approvals for the project. On May 23, 2003 Petitioners submitted a timely appeal. The Board considered the appeal on December 4, 2003, but voted 5-2 to affirm the MDEP's order, issuing a written decision on December 10, 2003. Petitioners filed a timely appeal to this court alleging (1) that the MDEP misinterpreted and misapplied the Site Law standard requiring evidence of financial capacity to construct, operate and maintain the project; (2) the MDEP failed to find that Pinnacle's development will affect existing neighbors and the scenic character of the area; and (3) the MDEP failed to require Pinnacle to avoid wetlands impact to the extent feasible.

## STANDARD OF REVIEW

When the court acts in an intermediate appellate capacity to review an administrative agency's decision pursuant to M.R. Civ. P. 80C, the agency's decision is reviewed for errors of law, abuse of discretion or findings not supported by substantial evidence in the record. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114, 1117, *Munjoy Sporting and Athletic Club v. Dow*, 2000 ME 141, ¶ 6, 755 A.2d 531, 536. As the party attempting to vacate the decision, the petitioner bears the burden of persuasion. *Town of Jay*, ¶ 10, 822 A.2d at 1117. The Court gives deference to an agency's interpretation of a statute it administers, but the Court will not uphold the agency's interpretation if the language and purpose of the statute or the agency's practice in other cases contradicts the specific interpretation *Id.*

## DISCUSSION

I. FINANCIAL REQUIREMENTS

Under Maine law,                     .

2

The department [of environmental protection] shall approve a development proposal whenever it finds that the:

> developer has the financial capacity and technical ability to develop the project in a manner consistent with state environmental standards and with the provisions of this article. The commissioner may issue a permit under this article that conditions any site alterations upon a developer providing the commissioner with evidence that the developer has been granted a line of credit or a loan by a financial institution authorized to do business in this State as defined in *Title 9-B, section 131*, subsection 17-A or with evidence of any other form of financial assurance the board determines by rule to be adequate

38 M.R.S.A. 484(1).

Pinnacle submitted an undated letter of interest from its bank as well as a December 9, 2002 letter of interest (in the amount of $10 million dollars). Petitioners point to the fact that neither of these letters is a "letter of commitment" and also allege that $10 million understates the total project cost. Neither document mentions equity or what percentage of the total budget is coming from Pinnacle itself. There are no documents discussing how Pinnacle will maintain the site. There are no documents regarding negotiations with tenants or leases in the file.

Petitioners seem most concerned with the fact that when (or if) Pinnacle does submit detailed financial information, Petitioners will not be able to see it because the comment period will be over, which Petitioners see as a denial of their due process rights.

MDEP interprets the statute to allow MDEP the discretion to demand more detailed financial capacity information after the permits have been issued and before construction actually begins. The Board conditioned Pinnacle's permits upon the production of more detailed financial information before construction began and intends to hold Pinnacle to that requirement. Pinnacle stated that every request for

3

more detailed financial information was fulfilled and that it plans to continue to follow the Board's instructions throughout the process. Record at tab 45, page 11, condition 3. Furthermore, Pinnacle admits in its brief that it understands that no construction can commence until it obtains a firm funding commitment. This follows from its original application position in which Pinnacle estimated that the project's total cost would be $8 million, it would not begin construction until a "suitable amount" of the building was pre-leased and promised to provide more detailed financial information to the MDEP prior to the beginning of construction.

Petitioners' suggestion, at oral argument, that such conditioning of approval violates the express terms of first sentence of 38 M.R.S.A. § 484(1) is not persuasive when read together with the express statutory language of the second sentence, allowing such conditioned approval.

## II.    IMPACT ON THE NEIGHBORS

Petitioners argue that the MDEP did not consider the impact of Pinnacle's project on the scenic character of the Sable Oaks business park. Petitioners are concerned with how the proposed building is going to look from the golf course (the removal of vegetation along the boundary and the "massive" parking lot) and what impact the new building is going to have on the "campus like" environment. For example, golfers will now see a high fence instead of tall, mature fir trees.

Before issuing a permit, the department shall find that :

the developer has made adequate provision for fitting the development harmoniously into the existing natural environment and that the development will not adversely affect existing uses, scenic character, air quality, water quality or other natural resources in the municipality or in neighboring municipalities.

38 M.R.S.A. 481(3).

4

The MDEP alleges that there is substantial evidence in the record that Pinnacle is acting to minimize the effect of its project on the neighbors, but there are other buildings and parking lots in the vicinity, as this is an office park. MDEP also points to several changes that have been made to Pinnacle's design plans, which tried to make the project more palatable to the Petitioners (the position of the building, including its orientation and the fact that some of it will be built into the hill). At oral argument MDEP noted that 47% of the site will be comprised of landscaped or natural vegetation.

## II.    IMPACT ON THE EXITING WETLANDS

"Alteration of freshwater wetland areas on the property must be avoided to the extent feasible considering cost, existing technology and logistics based on the overall purpose of the project." 38 M.R.S.A. 480-X(3)(A)(1). "The area of the freshwater wetland to be altered must be limited to the minimum amount necessary to complete the project." 38 M.R.S.A. 480-X(3)(A)(2).

Petitioners argue that Pinnacle is making the maximum impact on the wetlands in question, including creating a larger parking lot than is required by South Portland zoning laws and necessity. Pinnacle responded to questions regarding parking with a letter from a commercial broker that states tenants look for buildings with a 5:1000 ratio (5 spots to every 1,000 square feet of office space) and some businesses look for more.

Pinnacle argues that is doing the best it can to balance the wetlands and its project. In response to DEP comments, Pinnacle changed its plans so that approximately 800 fewer feet of wetlands were impacted and it is creating a new wetland area on the property. At oral argument, the DEP noted that the wetland area in question was small, only a few thousand square feet above the minimum amount needed for review at all.

5

Because Petitioners have failed to show that the evidence in question compels a conclusion opposite from the one the DEP and the Board reached, their petition pursuant to M.R. Civ. P. 80C is hereby **DENEID**.

Date _May 27, 2005_

Justice, Superior Court

Date Filed __12-31-2003__     Cumberland     · Docket No. __AP-03-80__

                                                   County

Action __80C Appeal__

SABLEGOLF, LLC  
SABLOTS, LLC

MAINE DEPARTMENT OF ENVIRONMENTAL PROTECTIO[N]  
PINNACLE PARTNERS OF SABLE OAKS, LLC (PII)

vs.

| Plaintiff's Attorney | Defendant's Attorney   (Environmental Prot.) |
|---|---|
| Philip F.W. Ahrens, III, Esq./Helen L. Edmonds, Esq./Scotia R. Ryer, Esq. | Margaret Bensinger McCloskey |
| Pierce Atwood | Assistant Attorney General |
| One Monument Square | Maine Bar # 3003 |
| Portland, ME  04101 | 6 State House Station |
| 207-791-1100 | Augusta, Maine 04333-0006 |
| | 207-626-8800 |
| | JOHN BANNON, ESQ. (PINNACLE) |

Date of  
Entry