STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, SS                                      CIVIL ACTION
                                                  DOCKET NO. AP-12-26
                                                  _DHM-KEN - 5/15/2013_

GEORGETTE CURRAN,
    Plaintiff

            v.                                    DECISION

MAINE DEPARTMENT OF INLAND
FISHERIES AND WILDLIFE,
    Defendants


        Before the Court is Petitioner Georgette Curran's action seeking review under M.R. Civ.

P. 80C of a decision issued by the Maine Department of Inland Fisheries and Wildlife (the

"Department") denying her application for a permit to possess Koi fish in the State of Maine.

Ms. Curran's application was denied on April 30, 2012, and a hearing was held before the

Department's Review Board (the "Board") on May 15, 2012. In light of the evidence presented

by Ms. Curran, and based on information contained in the Department's file, the Board upheld

the Department's decision to deny Ms. Curran's request for a Possession permit for Nishiki Koi

fish. Ms. Curran subsequently appealed this final agency action to the Superior Court in

accordance with 5 M.R.S.A. § 11001 *et seq.*

        On March 5, 2012, an anonymous complaint was made to Operation Game Thief

("OGT"), a non-profit hotline that exists as an outlet for concerned citizens to report fish and

game violations to Maine Game Wardens, about a woman in possession of Koi fish in

Harpswell. After locating Ms. Curran through a motor vehicle query, Maine Game Warden

Evan Franklin, along with Sgt. Jason Luce, responded to Ms. Curran's residence and made

contact with her. The officers told Ms. Curran why they were there (the anonymous complaint)

and Ms. Curran informed them she was "working her tail off" to make certain types of fish legal

                                                                                              1

in Maine. She said she had been in contact with the Governor's Office and the Commissioner's Office. The officers explained to Ms. Curran that Koi are not allowed in Maine. Ms. Curran showed the officers her outdoor pond and also her indoor "aquarium room" which is equipped with a collection of pumps and tanks; the officers took photographs.

Common carp of all varieties, including Koi, are considered an aquatic nuisance species and are listed on the State of Maine Invasive Species Action Plan (October 2002) in the most harmful group of invasive fish species. Evidence demonstrates that common carp "have the ability to alter their habitat and negatively affect native species. Carp harbor and disseminate pathogens and parasites harmful to native species and present a risk to Maine's fragile native ecosystem." According to Appendix D: Advisory List of Invasive Aquatic Species, common carp can be introduced into the Maine environment via water gardens, aquarium and pet trade, and through illegal introduction. Common carp have the ability to displace similar species, decrease diversity, disrupt the food chain, change habitat communities, change water quality, and impair recreational fishing. It is highly likely to spread, it is biologically vigorous, meaning it has few natural predators, and they are difficult to manage. Based on this data, in 2002, the State determined that carp, including Koi, pose an unreasonable risk to Maine native fish and their environment.

On March 26, 2012, Warden Emily Bastian (in training) responded to Ms. Curran's residence along with Warden Franklin and Sgt. Luce. Ms. Curran indicated she had made attempts to lower the water temperature in an effort to match the water temperature Koi are typically kept in in Massachusetts. The officers explained to Ms. Curran that she needed to make plans to remove the fish from the State; Ms. Curran responded that she was trying to lower the water temperature to 55 degrees. The officers and Ms. Curran discussed some potential options

2

for places to which the Koi could be removed, and Ms. Curran told the officers she had sent in a permit application to the Department's main office in Augusta.

On March 27, 2012, Ms. Curran submitted her application to the Department for a permit to possess forty Koi fish. The Department denied her permit application on April 30, 2012, stating that possession of Koi is a violation of 12 M.R.S.A. § 12509(1), that Ms. Curran's fish have not been tested for diseases of regulatory concern, and underscoring the fact that common carp, including Koi, are considered an aquatic nuisance species. The notice of denial informed Ms. Curran that she had a right to appeal the decision by filing a request with the Department within thirty days. The Department afforded her an opportunity for an informal administrative hearing on the permit denial on May 15, 2012. At this hearing, Ms. Curran was able to present evidence supporting her position that a permit was warranted under the circumstances, but after careful consideration, the Department decided that the potential threats posed by Koi to Maine's ecology outweighed Ms. Curran's individual concerns. Ultimately, the Department upheld the permit denial on May 22, 2012, and Ms. Curran subsequently filed the present appeal on May 30, 2012.

After Ms. Curran filed this appeal, on July 3, 2012, the Department issued her a permit for the possession of Koi subject to several restrictions. Among the restrictions, Ms. Curran is limited to forty Koi, she is not allowed to breed them, and, most relevant to the present Petition, the Koi must be housed indoors and under no circumstances held in an external location.[1] The

---

[1] To expand, the following is a list of all the restrictions to which Ms. Curran is subject:
1) This permit is established for only the 40 KOI that are presently housed at the Georgette Curran residence at 403 Cundy's Harbor Road, Harpswell, ME.
2) Applicant must provide a full written description detailing the physical attributes of the 40 KOI. Photos to be provided if possible.
3) Applicant must provide a mechanical drawing of the facility, including specifications on water source, piping, discharge, etc.
4) Applicant to research the sources of these 40 KOI to determine if any historical pathology or fish health tests are available. Copies to be provided to IFW if available.

3

restrictions allow Ms. Curran to keep her Koi, but also require her to comply with measures intended to prevent the release of the Koi into Maine waters.

When an administrative agency's decision is challenged on appeal, the scope of review is limited to whether the agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *See Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 17, 953 A.2d 378. When a court reviews an agency's interpretation of its own rules, regulations, or procedures, it gives considerable deference to the agency, and will not set aside the agency's interpretation unless the plain meaning of the rule or regulation compels a contrary result. *See id.* Additionally, in such a case, the burden of proof lies with the party seeking to overturn the administrative agency's decision. *See Town of Jay v. Androscoggin Energy, LLC*, ¶ 10, 822 A.2d 1114. Where "the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision." *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 28, 39 A.3d 74. Additionally, "[a]n abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id.* (internal citation omitted).

---

5) No breeding of these fish is permissible. Any accidental or incidental progeny shall be destroyed immediately, and IFW is to be notified immediately . . . .
6) In the event that a fish dies, the following steps shall be taken:
   a) Notify IFW within 24 hours . . .
   b) Applicant must make arrangements with a fish health lab for a complete necropsy with virology of the dead fish.
7) Fish are to be housed indoors and under no circumstances moved to an external location.
8) No trading, giving, selling or any of these KOI is permissible.
9) Absolutely no additional KOI will be added for any reason.
10) Any violation of these conditions will result in immediate revocation of this permit.
11) This department reserves the right to inspect the property as necessary.
(A.R. Tab 12.)

4

Pursuant to 12 M.R.S.A. § 12509, it is unlawful to introduce, import, or transport any live freshwater fish or eggs into the State of Maine "or receive or have in that person's possession fish or gametes so introduced, imported or transported without a valid permit issued under this section." 12 M.R.S.A. § 12509(1). In such a matter, the decision whether or not to issue a permit is properly left to the discretion of the Commissioner who may grant a permit for such introduction, importation, or transportation subject to the requirement that the Commissioner determines that "the species does not pose an unreasonable risk to any species of fish or other organisms after evaluating fish health, habitat and population management issues." *Id.* at (2). Subject to the Law Court's holding in *Forest Ecology Network*, the Petitioner can only prevail if she shows that the Commissioner abused his discretion in denying the permit.

The reasons why the Department denied Ms. Curran's permit application have been duly discussed: common carp, including Koi, are an aquatic nuisance species in Maine whose impact on Maine's native fish ecology and environment have been listed and established in the record. To summarize, the Department has found that the species poses a high risk for biological and socio-economic impacts, and it is very difficult to manage. A significant aspect of the Department's concern, and a basis for its denial of the permit application, is the genuine risk that the Koi could be released into the environment.

The July 3, 2012 permit issued by the Department *does*, despite the listing of Koi on the invasive species list, permit Ms. Curran to possess Koi subject to reasonable restrictions that are not unduly difficult to meet. Yet, the basis of Ms. Curran's appeal is that the permit she was granted on July 3, 2012 is overly restrictive, and also fails to consider the numerous differences between common carp and Koi. Yet, applying the above-articulated standard—that Ms. Curran

5

can only prevail if she establishes abuse of discretion on the part of the Department—clearly indicates that she has not satisfied her burden.

Put simply, the Department conducted itself with tact and respect in this situation. Even though the Legislature has found Koi to be a nuisance invasive species, the Department has still allowed Ms. Curran to possess the fish. Ms. Curran appears to be using this Petition as a platform to have the possession of Koi legalized in Maine. She was already provided with a remedy—her restricted permit—but Ms. Curran has chosen to proceed with the case in an effort to align Maine with the other forty-nine states that allegedly permit possession of Koi fish. She is asking of the Court a remedy it cannot give.

The Department, in addition to asserting the convincing evidence of § 12509's reason for existence, has supplied detailed information about both the potential pernicious impact of Koi should these fish be released into the wild, as well as has conducted a study of Ms. Curran's property. The Department's fisheries biologist, Francis Brautigam, concluded that Ms. Curran's outdoor pond is not in a secure location. He concluded that in order for an outdoor pond to be suitable for housing the Koi, Ms. Curran would need to have a fully enclosed and lockable structure to satisfy security concerns. Under the circumstances, the issuance of a restricted permit was reasonable because it allows Ms. Curran to possess the fish under strict conditions, where otherwise, she would be unable to do so lawfully.

Ms. Curran has not met her burden of proving that the way in which the Department upheld the regulation with which it is charged to enforce amounts to an abuse of discretion. In her Reply Brief, Ms. Curran argues that Koi are only a subspecies of the common carp in the way that the domestic dog is a subspecies of the wolf. The Court presumes this is to show that since the State of Maine would not prevent a person from possessing a dog, the like possession

6

of Koi fish should be treated accordingly. This is an unconvincing syllogism. Ms. Curran next submits data attempting to undermine the data upon which the Department relies but suggesting that common carp do not do well in cool clear waters. Ms. Curran is asserting that even if released into Maine's waterways, the Koi would not thrive. Again, this does not overcome the substantial data provided by the Department.

Lastly, Ms. Curran argues that because the other forty-nine states in the Union classify Koi as Aquarium Trade Fish, it is unreasonable for Maine to decline to do so. This is more in line with Ms. Curran's ongoing effort to establish that Koi fish ownership is some sort of suspect class and that this amounts to unreasonable discrimination. Ms. Curran does not articulate any legal basis for her claim.

For reasons stated herein, the entry will be,

The petition for relief from the Decision of the Maine Department of Inland Fisheries and Wildlife Review Board dated May 22, 2012 IN RE: Georgette Curran is DENIED; the matter is REMANDED to the Commissioner.

May 15, 2013

JUSTICE, SUPERIOR COURT

7

| Date Filed | 6/13/12/12 | Kennebec County | Docket No. AP-12-26 |

Action: <u>Petition for Review</u>
80C

**J. Marden** ~~**J. Mills**~~

| Georgette Curran | vs. | Department of Inland Fisheries and Wildlife |

| Plaintiff's Attorney | Defendant's Attorney |

Georgette Curran - Pro Se
403 Cundys Harbor Road
Harpswell, ME 04079

Mark Randlett, AAG
6 State House Station
Augusta Maine 04333-0006

Date of Entry

| 6/14/12 | Petition for review, filed 6/13/12. s/Curran, Pro Se |

| 6/26/12 | Certified mail receipt served on 6/15/12 |

| 7/16/12 | Letter entering appearance, filed. s/Randlett, AAG (filed 7/2/12)<br>Motion to Enlarge the Time in Which to File the Administrative<br>Record, filed. s/Randlett, AAG (filed 7/6/12) |

| 7/16/12 | Letter informing the court there is no objection to the request for<br>additional time, filed. s/Curran, Pro Se (filed 7/13/12) |

| 7/20/12 | ORDER, Mills, J.<br>Motion granted. No objection.<br>If granted: the deadline for the filing of the Administrative Record is<br>extended to August 2, 2012.<br>Copies to counsel/party |

| 8/9/12 | Certification of Record, filed. s/Randlett, AAG (filed 7/31/12)<br>NOTICE AND BRIEFING SCHEDULE ISSUED:<br>Copies to counsel/party |

| 9/17/12 | Certification of Record, filed. s/Curran Pro Se (Brief)<br>Index to Record, filed. s/Curran, Pro Se (Brief) |

| 10/3/12 | Brief of Respondent Maine Department of Inland Fisheries and Wildlife,<br>s/Randlett, AAG |

| 10/16/12 | Brief Reply by Petitioner to the Maine Department of Inland Fisheries and<br>Wildlife Brief, filed. s/Curran, Pro Se |

| 3/27/13 | Oral argument scheduled for 5/8/13 at 11:00.<br>Notice sent to Petitioner and AAG Randlett |

| 5/8/13 | Oral argument held. J. Marden presiding.<br>Appearances by Georgette Curran, Pro Se and Mark Randlett, AAG.<br>Tape 1691, Index 3811-5457 Under advisement |

5/16/13     Decision on Review, Marden. J

The petition for relief from the Decision of Maine Department of Inland Fisheries and Wildlife Review Board dated May 22, 2012 IN RE: Georgette Curran is DENIED; the matter is REMANDED to the Commissioner

Copies to Curran and Randlett, AAG.

Copy to repositories.

Notice of removal sent to parties.