STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL DIVISION
                                                  DOCKET NO. AP-15-09

ANTONIO ARCE,                        )
                                     )
        Petitioner,                  )
                                     )
v.                                   )         **Order on Rule 80C Appeal**
                                     )
                                     )
                                     )
MAINE UNEMPLOYMENT                   )
INSURANCE COMISSION,                 )
                                     )
        Respondent.                  )

## INTRODUCTION

Before the Court is an M.R. Civ. P. 80C appeal by the Petitioner, Antonio Arce, from a decision of the Maine Unemployment Insurance Commission finding that Mr. Arce was not eligible for Workers Eligibility Allowance while in training under the Trade Adjustment Assistance ("TAA") program. On March 2, 2015, the Bureau of Employment Services denied Mr. Arce's application for TAA, and Mr. Arce appealed. Hearing was held on March 18, 2015, and the Administrative Hearing Officer issued his decision affirming the Bureau of Employment Services on March 24, 2015. Mr. Arce appealed to the Unemployment Insurance Commission, which rendered its decision affirming the Administrative Hearing Officer on May 15, 2015, based on the existing evidentiary record. Mr. Arce filed a request to reconsider, which was denied on July 15, 2015. Petitioner filed this 80C appeal on August 13, 2015. Petitioner submitted additional evidence to support his claim, which was admitted over Respondent's objection.

This order reviews the record as developed before the administrative agency and outlines

1

the standard of review. Both are critically important to this appeal. Petitioner is intelligent and capable, but he is not a lawyer. Had he had legal assistance he might have framed his presentation to the Bureau of Employment Services so as to include additional facts at the initial hearing—particularly, the different types of carpentry work he was willing to perform, and the possibilities of defraying some of the costs of training at his chosen institution that he now asks this Court to reconsider. As summarized below, however, this Court's review is limited to the record as it was developed before the agency. This Court cannot consider evidence that was not offered at the hearing or considered by the Unemployment Insurance Commission. The same rule applies at every stage in the appeal process—any further appeal will also be limited to the administrative record.

Neither can this Court substitute its own interpretation of the record for the agency's interpretation. If the agency's interpretation fell within the bounds of the law, and there are facts to support it, it must be upheld.

Having reviewed the record, the parties' filings, and their respective arguments, the Court **AFFIRMS** the decision of the Maine Unemployment Insurance Commission.

## BACKGROUND

Antonio Arce was laid off after twenty-seven years of employment at the Verso paper mill on December 31, 2014. (R. 79-80.) Pursuant to Trade Adjustment Assistance ("TAA") certificate number 85574, Mr. Arce, as an adversely affected worker, was eligible to apply for TAA. (R. 18.) The TAA certificate has been effective from January 7, 2014, to November 12, 2016. (R. 18.) As part of the TAA program, Mr. Arce applied for a training allowance to pursue a carpentry diploma through a two-year preservation carpentry program at North Bennett Street School in Boston, MA. (R. 99.) On March 2, 2015, the Bureau of Employment Services denied

2

Mr. Arce's request for training on the grounds that (1) there was not a reasonable expectation of employment following the training, and (2) the training is not available at a reasonable cost. (R. 100.) This decision was affirmed on appeal by the Unemployment Insurance Commission on May 15, 2015, and affirmed again on appeal on July 15, 2015.[1] (R. 2, 9.)

Preservation carpentry is a specialized construction trade focused on repairing or restoring buildings to their original condition. (R. 19.) North Bennett Street School accepts twenty-six students for its preservation carpentry program each year. (R. 66.) North Bennett's post-graduation employment rate is between 77% and 90%, depending on which source is consulted. (R. 50; Pet'r's Ex. 2.) The 90% employment rate does not identify the nature of the employment, stating that 90% of graduates are employed in related fields.[2] (Pet'r's Ex. 2.)

The job outlook for a person graduating with a degree in preservation carpentry is very speculative. (Pet'r's Ex. 2.) Mr. Arce testified that he contacted a carpenter's union in Massachusetts, and conceded that the union would not likely provide employment in preservation carpentry. (R. 70-71.) Mr. Arce puts forth an expansive list of carpentry job openings in the New England area spanning a full year, of which only approximately thirty are entry-level paid jobs in preservation carpentry. (Pet'r's Ex. 4.)

The cost of the two-year preservation carpentry program at North Bennett is $49,986. (R. 19, 100.) At the time of the Administrative Hearing Officer's decision, Mr. Arce was still living in Maine and had no concrete plans to move closer to North Bennett (though he mentioned that

---

[1] Mr. Arce argues that it was an error for the Unemployment Insurance Commission to limit its review of his appeal to the evidentiary record. However, the Commission has the discretion to "affirm, modify, or set aside any decision of an appeal tribunal on the basis of the evidence previously submitted in such case" and is not required to consider new evidence. 26 M.R.S. § 1194(5); *Sheink v. Me. Dep't of Manpower Affairs*, 423 A.2d 519, 523 (Me. 1980).

[2] Generally, "[j]udicial review shall be confined to the record upon which the agency decision was based," meaning that evidence not put forward at the hearing should not be considered by this Court. 5 M.R.S. § 11006(1); *New Eng. Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 60 (Me. 1988). However, to ensure that all of Mr. Arce's arguments were fully considered, some outside exhibits were entered in this matter and discussed.

3

he might be able to live with family during his schooling), so the subsistence cost (training, meals, etc.) was estimated at $54,000. (R. 19.) Mr. Arce has since moved to West Bridgewater, MA, which is about thirty miles outside Boston, thereby decreasing the estimated subsistence cost. (R. 12.) Mr. Arce also qualified for a $4,800 scholarship award and $18,800 in federal loan assistance, which brings the tuition cost down to $26,186. (Pet'r's Br. 8.) There are other general carpentry programs available to Mr. Arce at lesser cost, but these do not specialize in preservation carpentry. (R. 47.)

Mr. Arce has a high school diploma, thirty credit hours from the University of Maine in forest development and education, a CDL class B driver's license, sixty-four hours of welding, and has taken a six-month carpentry program. (R. 19, 91.) At Verso paper mill, Mr. Arce worked as a laborer and production worker, and prior to that he worked shipping log homes. (R. 86, 91.) Throughout his employment with Verso, Mr. Arce coached various sports and ran a small handyman business. (R. 90.)

## STANDARD OF REVIEW

A determination or redetermination of Trade Adjustment Assistance (TAA) or Trade Readjustment Allowance (TRA) is subject to review in the same manner and to the same extent as determinations and redeterminations under Maine law. 20 C.F.R. § 617.51(a). When the Superior Court sits as an intermediate appellate court and reviews an appealed agency decision, the agency decision is reviewed directly. *Sinclair Builders, Inc. v. Unemployment Ins. Comm'n*, 2013 ME 76, ¶ 9, 73 A.3d 1061.

On a M.R. Civ. P. 80C appeal, the Court reviews state agency decision-making, but its review is "deferential and limited." *Watts v. Board of Envtl. Prot. et al.*, 2014 ME 91, ¶ 5, 97 A.3d 115. Adjudicatory decisions are reviewed "for abuse of discretion, errors of law, or

4

findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985. The Court cannot "vacate an agency's decision unless it: violates the Constitution or statutes; exceeds, the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record." *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566.

Additionally, the party attempting to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. And. Energy*, LLC, 2003 ME 64, ¶ 10, 822 A.2d 1114. Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551 (*citing Bischoff v. Bd. of Trustees*, 671 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id.* The Court will not disturb an agency decision unless the record compels a contrary result. *McPherson Timberlands v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818.

## DISCUSSION

The Trade Adjustment Assistance program, administered in Maine by the Maine Department of Labor, offers a variety of benefits and reemployment services to help adversely affected workers prepare for and obtain suitable employment. 19 U.S.C. § 2311. Once certified by the U.S. Department of Labor, adversely affected workers can apply for a training allowance. Training shall be approved for an adversely affected worker only if all of the following conditions are met:

1. There is no suitable employment (which may include technical and professional employment) available for an adversely affected worker.
2. The worker would benefit from appropriate training.
3. There is a reasonable expectation of employment following completion of such

5

training.

4.     Training approved by the Secretary is reasonably available to the worker from either governmental agencies or private sources.

5.     The worker is qualified to undertake and complete such training.

6.     Such training is suitable for the worker and available at a reasonable cost.

20 C.F.R. § 617.22. Here, training was denied because the Administrative Hearing Officer determined that there was not a reasonable expectation of employment in the field of preservation carpentry, and the proposed training was not available at a reasonable cost. (R. 20.) Each finding is discussed to determine whether it was supported by competent evidence on the record and whether the Administrative Hearing Officer applied the correct law.

I.     Reasonable Expectation of Employment Following Completion of Training

Under 12-597 C.M.R. ch. 1, § 1(1)(H) (2014), an individual has a reasonable expectation of employment when "given the job market conditions expected to exist at the time of the completion of the training program, there is, fairly and objectively considered, a reasonable expectation that the individual will find a job, using the skills and education acquired while in training, after completion of the training."

The Hearing Officer found that the record evidence established that 77% of one training class obtained employment after graduation. (R. 20.) This figure was provided at the hearing by Ms. Pelletier, the Bureau of Employment Services representative, and at the time was not disputed by Mr. Arce. (R. 44, 48-54.) The Hearing Officer properly pointed out that there is no evidence on the record that indicates that this employment was with an employer or that the employment was using the skills and education acquired in training. (R. 20, 44.) Further, the record contains no evidence of the projection of job market conditions for preservation carpentry in Massachusetts at the time the claimant would be completing the training. Mr. Arce talked generally about there being many older buildings in Massachusetts, which would suggest a

potential need for preservation carpentry, but did not substantiate this opinion with specific evidence. (R. 69.) Therefore, the record supports the Hearing Officer's finding that there is a "lack of evidence to support a finding regarding the job market conditions for preservation carpentry in Massachusetts." (R. 20.)

The Hearing Officer also found that it was uncertain where Mr. Arce would be residing, making it impossible to determine that Mr. Arce meets the criteria for reasonable expectation of employment. (R. 20.) Mr. Arce lived in Maine and owned a house in Maine at the time of the hearing.[3] (R. 99.) At the hearing, Mr. Arce testified regarding his potential living situation during training: "Well, the thing is [that I've] got so many opportunities. Like I said, I'm selling – I'm in the process of selling my house. I should have it up on the market by April. Hopefully, I'll get it sold within this year." (R. 64.) As for his plan to move, Mr. Arce testified: "[M]y wife and I, we decided to go to – move to Massachusetts. Pretty much, that's where we're going to be headed to. I don't know what part of Massachusetts, but it's not going to be – you know, it's going to be an area where I could, you know, go to school and get a job . . . But the opportunity in the state of Maine is not here." (R. 58-59.) The Hearing Officer found that Mr. Arce's "relocation to Massachusetts is conditioned upon selling his present home in Maine," which is supported by Mr. Arce's testimony at the hearing. (R. 20.) Mr. Arce has since moved to Massachusetts, but that does not change the fact that the Hearing Officer's decision at the time was supported by competent evidence. Therefore, the record supports the Hearing Officer's finding that it is not possible to determine that Mr. Arce met the criteria for reasonable expectation of employment following completion of training.

---

[3] It is undisputed that there are few, if any, preservation carpentry job opportunities available in Maine, so the discussion was centered around job opportunities in Massachusetts. (R. 48, 58-59.)

II.    Reasonable Cost

Additionally, to be approved, the training must be "at the lowest reasonable cost." 12-597 C.M.R. ch. 1, § 6 (2014). Training shall not be approved if it requires an extraordinarily high skill level, and where the total costs of the training are substantially higher than the costs of other training suitable for the worker. *Id.* at § 6(1)(D). Further, "training shall not be approved if the average costs of training are unreasonably high in comparison with the average costs of training of other individuals in similar occupations at other institutions or facilities providing training substantially similar in quality, content and results within a similar time frame." *Id.* at § 6(1)(E).

"The total cost of any TAA training shall be considered unreasonable if it exceeds $25,000." *Id.* at § 6(1). "The TAA Coordinator may consider those training plans that exceed the reasonable cost limit, if there is an extenuating circumstance and if funding is available. An extenuating circumstance may exist when the individual resides in a rural part of the State that has few or no training options available within the commuting area, and the travel costs increase the overall cost of the plan beyond $25,000." *Id.* at § 6(1)(C).

The Hearing Officer found that the training sought by Mr. Arce would cost approximately $49,986.00. (R. 21.) While there was discussion in the record of a subsistence cost of $54,000.00, this figure was reasonably left out of the total cost provided in the Hearing Officer's decision because Mr. Arce testified that he would likely live closer to North Bennett Street School during his training. (R. 21, 64.) The total cost of $49,986.00 is consistent with the record: "the training program itself [is] about $50,000" (R. 45.); "In this plan, the training cost is $49,986.00." (R. 100.) At the time of the hearing, Mr. Arce had not been accepted into North Bennett, so he had no way of providing evidence that his tuition would be reduced by

8

scholarships or loans. (R. 67.) However, Mr. Arce knew that he would not be eligible for a federal Pell grant to aid in the cost of tuition. (R. 63.) The record contains competent evidence supporting the Hearing Officer's finding that the cost of the program would be $49,986.00. (R. 21.) The Hearing Officer then found that $49,986.00 "far exceeds what the State of Maine has determined, by rule, to be a reasonable cost of TAA training." (R. 21.) This is consistent with the law, with states that "TAA training shall be considered unreasonable if it exceeds $25,000." 12-597 C.M.R. ch. 1, § 6(1).

Mr. Arce now puts forth evidence that he qualified for a $4,800 scholarship award and $18,800 in federal loan assistance, which brings the tuition cost down to $26,186.00. (Pet'r's Br. 8.) Even if this Court could consider $26,186.00 instead of the $49,986.00 that was reasonably determined by the Hearing Officer, it is still $1,186 greater than the $25,000 allowed for TAA training. The only time it may be appropriate to exceed the reasonable cost limit is when "the travel costs increase the overall cost of the plan beyond $25,000" due to the individual residing in a rural area. 12-597 C.M.R. ch. 1, § 6(1)(C)(1). Here, the requested allowance of $26,186 does not even include subsistence (travel, etc.) costs, so there is no basis for a finding that exceeding the reasonable cost limit of $25,000 is appropriate here.

CONCLUSION

The Administrative Hearing Officer determined that there was no reasonable expectation of employment following completion of training and that the cost of the requested TAA training was unreasonable because it exceeded $25,000. This finding was supported by competent evidence in the record; there was no indication of any abuse of discretion; and the law was correctly stated and applied in the Administrative Hearing Officer's decision, the Unemployment Insurance Commission's decision affirming the Hearing Officer's decision, and the

9

Unemployment Insurance Commission's denial of reconsideration. Therefore, having reviewed the record, the parties' filings and their respective arguments, the Court **AFFIRMS** the decision of the Maine Unemployment Insurance Commission.

The entry is:

1. The Maine Unemployment Insurance Commission Decision No. 15-C-03411 is **AFFIRMED**.
2. The Maine Unemployment Insurance Commission Decision No. 15-C-02549 is **AFFIRMED**.
3. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 3/3/16

Bruce C. Mallonee
Justice, Maine Superior Court