STATE OF MAINE                                     SUPERIOR COURT
KENNEBEC, ss.                                      CIVIL ACTION
                                                   DOCKET NO. AP-15-49


SHANE HEATH,                        )
                                    )
              Petitioner            )
                                    )
v.                                  )
                                    )  **ORDER ON RULE 80C APPEAL**
BOARD OF TRUSTEES, MAINEPERS        )
                                    )
              Respondent.           )


Before the Court is Petitioner's appeal of the denial of his application for

disability retirement benefits by MPERS.

    I.    Background

          a.  Medical

    In 2003, Petitioner first met with Dr. Rice for an eye injury resulting from

playing softball. (R. at 3). According to Dr. Rice's February 19, 2014 report,

Petitioner had suffered "substantial permanent vision loss in the left eye to

glaucoma and showed signs of incipit glaucoma in the right." (R. at 43.5). Dr.

Rice prescribed treatment with drop therapy, which Petitioner followed for

several years. (R. at 43.5). Petitioner developed a traumatic cataract in the left

eye. (R. at 43.5). Dr. Rice removed the cataract in 2008. (R. at 43.5). Thereafter,

Petitioner's vision was significantly improved to 20/20 in his left eye, although

he was diagnosed with irreversible and substantial visual field loss due to

glaucoma. (R. at 43.6). In December 2012, Petitioner complained to Dr. Rice that

he suffered severe glare affecting both night and day driving.  (R. at 43.6). Dr.

Rice successfully performed cataract surgery on Petitioner's right eye. (R. at 43.6).

1

On December 28, 2012 and January 16, 2013, Petitioner's vision was measured at 20/20 by Dr. Rice. (R. at 43.6). Petitioner left work February 5, 2013 and did not return. (R. at 43.6). On February 11, 2013, Petitioner met with Dr. Rice complaining of having trouble on the job. (R. at 43.6). His vision was again measured at 20/20. (R. at 43.6). Dr. Rice wrote a note recommending that Petitioner be taken off duty because of a flare up of preexisting glaucoma for the next 2-3 weeks. (R. at 43.6). On February 20, 2013, Petitioner's vision was measured at 20/20 in the right eye and 20/25 in the left. (R. at 43.6). At that time Dr. Rice wrote a second note concerning Petitioner's employment stating that Petitioner should remain off duty through April 3, 2013. (R. at 43.6).

In April 2013, Petitioner complained of foggy vision and Dr. Rice performed a YAG laser capsulotomy on May 13, 2013. (R. at 43.6). Dr. Rice stated that this procedure usually resolves problems of glare and foggy vision. (R. at 43.6). On May 29, 2013, Dr. Rice's note indicated that Petitioner had reported glare symptoms and did not feel safe performing his job. (R. at 43.6). Dr. Rice stated that he was not qualified to determine whether Petitioner was able to continue working as a patrolman. (R. at 43.6).

On June 27, Petitioner's vision was measured at 20/20 on the right eye and 20/30 on the left eye. (R. at 43.6). Under glare stress, his vision was measured at 20/30 on the right and 20/50 on the left. (R. at 43.6). In a February 19, 2014 letter, Dr. Rice reported that Petitioner had complained of glare and fog interfering with his vision making him feel unsafe doing his job. (R. at 43.6). In a letter dated February 20, 2014, Dr. Rice stated that the reported symptoms of glare and fog likely resulted from the damage to his left eye. (R. at 43.7). In that

letter Dr. Rice concluded that Petitioner "was incapable of pursuing his current line of work as of February 5, 2013. (R. at 43.7).

   b.  Employment

Petitioner returned to the Berwick Police Department in 2002 after living outside of Maine. (R. at 43.7). Petitioner was considered marginal employee. (R. at 43.7). He had been disciplined on multiple occasions. (R. at 43.7). On January 28, 2013, shortly before he left work, the Town of Berwick Employee Performance Evaluation stated that his reporting was unsatisfactory, he failed to accept responsibility, and he was overall not meeting the expectations of the employer. (R. at 43.7).

On February 5, 2013, Chief Towne scheduled a meeting with Petitioner to discuss a new incident under investigation. (R. at 43.7). The meeting was to discuss the investigation of Petitioner's possible use of excessive speed. (R. at 43.7). In the meeting, Petitioner told Chief Towne that he did not intend to work past April 2013 at which point he would have put in sufficient years to receive his full pension. (R. at 22.20, 24, 62). After the meeting, Petitioner left work and returned only to voluntarily clean out his desk and hand in his firearm. (R. at 43.7). On February 7, 2013, after Petitioner's departure, a notice was issued to Petitioner concerning a meeting to begin investigation for a situation involving a possibly impaired driver who Petitioner allowed to drive herself home. (R. at 43.8). The investigations were put on hold during Petitioner's absence. (R. at 43.8). Because Petitioner did not return to work, the investigations were never completed. (R. at 43.8).

3

c. Procedural History

Petitioner applied for disability retirement benefits on February 28, 2013. His application was denied by the Executive Director ("ED") on June 24, 2013. (R. at 43.3). Petitioner filed an appeal on July 23, 2013. (R. at 43.3). The hearing took place on March 26, 2014. (R. at 43.3). MPERS deposed Chief Timothy Towne on April 22, 2014. (R. at 43.3). MPERS issued a decision on July 23, 2014 accompanied by a memorandum from the Medical Board dated July 17, 2014 affirming the determination of the ED. Both parties submitted memorandum on August 22, 2014. (R. at 43.3). The Hearing Officer's Recommended Decision For Comment issued on December 22, 2014. (R. at 43.4). The Board of Trustees (the "Board") adopted the Recommended Decision on June 11, 2015. (R. at 43.2).

II. Standard of Review

The court's review of an action for administrative appeal is "deferential and limited." *Watts v. Bd. of Envtl. Prot.*, 2014 ME 91, ¶ 5, 97 A.3d 115. The court only reviews adjudicatory decisions "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985. The court will "not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds, the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record." *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566.

The party attempting to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114. If the agency's decision was committed to the reasonable discretion of the

4

agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham,* 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id.* Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Examiners of Psychologists,* 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *Bischoff v. Bd. of Trustees,* 661 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id.*

III.    Discussion

In order to be eligible for MPERS disability retirement benefits, one must have been fully and permanently disabled while in service. 5 M.R.S. § 17924. One is disabled when he is mentally or physically incapacitated and that incapacity is expected to be permanent and makes it impossible for him to perform the essential duties of his employment position. 5 M.R.S. § 17921. The MERS Medical Board was established to provide expert advice to MPERS on the existence of physical and mental functional limitations entitling an applicant to benefits. *See* 5 M.R.S. § 17106.

In this case, the Medical Board based its advice to the ED in part on Petitioner's employment history. The Medical Board was skeptical of the timing of Petitioner's glaucoma flare up and the fact that Petitioner never requested an accommodation for his vision issues or indicated to Chief Towne that he was having any difficulty at work. Additionally, the Medical Board found it unlikely that Petitioner's complaints from glare arose from the traumatic glaucoma and

5

left eye visual field loss that had been present for years. Petitioner alleges that any consideration of Petitioner's employment history is irrelevant and, furthermore, it is not within the purview of the Medical Board to consider. The question before the Court is whether the Medical Board may consider such employment information in advising MPERS whether a mental or physical limitation is present.

The Court does not need to reach the legal question of whether the Medical Board may consider employment history in making a determination, because even without the Medical Board's concerns about Petitioner's employment history, there is competent evidence on the record to support the decision adopted by the Board. The Board is able to determine the weight to be afforded to various medical evidence in light of other relevant factors, such as Petitioner's stated intent to leave employment as soon as his pension had vested or the fact that Petitioner left employment immediately after a meeting to discuss investigation of possible wrong doing on Petitioner's part. *See* 5 M.R.S. §§ 17106, 17106-A. Furthermore, the Board is permitted to accord weight to the Medical Board's opinion that Petitioner's complaints of glare were unlikely to have arisen from glaucoma and visual field loss diagnosed many years prior. Because the Court finds that there is evidence in the record to support the determination by the Board, the Court affirms the Board's determination.

IV.     Conclusion

Petitioner has not met his burden of showing that the Board's determination "violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by

6

the evidence in the record." *Kroeger*, 2005 ME 50, ¶ 7. Therefore, the Court affirms the Board of Trustees' Decision and Order of June 11, 2015.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE: 10/13/16

Michaela Murphy
Justice, Superior Court