STATE OF MAINE                                        SUPERIOR COURT

Cumberland, ss.


PAUL W. KNOLL

STATE OF MAINE
Cumberland, ss. Clerk's Office

Petitioner OCT 14 2016

         v.          RECEIVED          Docket No. PORSC-AP-16-25

MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM

Respondent

## DECISION ON APPEAL

Pursuant to Rule 80C of the Maine Rules of Civil Procedure, Petitioner Paul W.

Knoll appeals from a decision of the Respondent Maine Public Retirement System (MPERS)

denying his application for disability retirement benefits.

Before the court are Petitioner's and Respondent's briefs as well as Petitioner's reply

brief and the administrative record.   The court elects to decide this case without oral

argument, *See* M.R. Civ. 80C(l) (oral argument to be scheduled "[u]nless the court

otherwise directs." *See also Lindemann v. Comm'n on Governmental Ethics & Election Practices,*

2008 ME 187, ¶26, 961 A.2d 538 (Rule 80C permits court to direct that oral argument not

be scheduled).

Based on the entire record, the court affirms the decision of MPERS and denies the

appeal.

## I.     Background

Petitioner Paul W. Knoll was employed as the assistant principal at Memorial

Middle School in South Portland when he began experiencing headaches, fatigue, dizziness

and confusion in 2001. (R. at 36.6). These symptoms interfered with his ability to focus, read,

and learn. (R. at 36.6). He had difficulty with memory and attention span. (R. at 36.6). After

Mr. Knoll began experiencing these symptoms, other school employees complained of similar symptoms. (R. at 36.6).

The school was examined for mold and the National Institute for Occupational Safety and Health ("NIOSH") performed a health hazard evaluation. (R. at 36.6). A report dated December 17, 2003 stated that the building Mr. Knoll worked in had a history of odors and known water incursions and that there were sporadic indoor air quality problems. (R. at 36.6). However, private consultants and the Maine Department of Labor investigated the building and did not find mold amplification. (R. at 36.6).

Mr. Knoll was evaluated by a number of medical professionals, many of whom concluded that Mr. Knoll could not return to work as assistant principal at Memorial Middle School. (R at 36.7). Mr. Knoll stopped working in October 2002. (R. at 36.7).

On July 1, 2003, Mr. Knoll applied to Maine Public Employees Retirement System ("MPERS") for disability retirement benefits. (R. at 36.3). After reconsideration of an initial denial, Mr. Knoll's application was approved by decision of the Executive Director dated July 19, 2005, based on a finding that Mr. Knoll was incapacitated by the condition of cognitive disorder, not otherwise specified (NOS), as of October 17, 2002. (R. at 36.7). The application was denied as to any history of fungal/mold allergy and adjustment disorder with anxiety and depression. (R. at 36.7).

After discontinuing his work at the school in 2002, Mr. Knoll worked in several different capacities. (R. at 36.7). He worked in website design, for a publisher packing books, and at Royal Bean Coffee Shop serving coffee and pastries. (R. at 14.157, 36.7). He worked in the field of dowsing, also referred to as geomancy. (R. at 14.151-52, 36.7). He has maintained a website and blog and offered workshops and personal services in the area of shamanism including shamanic journeying and shamanic energy and healing. (R. at 14.153-55, 14.177,

2

36.7). He has produced and self-published a CD on shamanic practices. (R. at 177-78). On the occasions Mr. Knoll was able to find paid work in dowsing or shamanism, he offered his services at rates of $50.00 to $100.00 per hour. (R. at 36.7).

Mr. Knoll has also worked at SaviLinx, a call center in Brunswick, Maine. (R. at 36.7). He began in February 2014 as the lead agent on a contract with DHL. (R. at 36.7). He worked 2-3 hours per day and his responsibilities included scheduling his call team of six or seven people, communicating with DHL on a daily basis about the team's performance, and managing the team to address any issues. (R. at 36.7). At the end of the contract with DHL, Mr. Knoll was assigned to work on a contract with General Dynamics. (R. at 36.7). Mr. Knoll made eight business trips to Mississippi for SaviLinx for the purpose of conducting interviews and training sessions for General Dynamics. (R. at 36.7). At SaviLinx he worked mainly in the human resources area, presenting orientation sessions and team building presentations. (R. at 36.7). Daniel Murray, an employee of SaviLinx working with Mr. Knoll, testified that Mr. Knoll is "very good at what he does" and "prompt and punctual". (R. at 36.7).

In addition, Mr. Knoll has developed and presented a story, based on a life experience, that was broadcast nationally on Moth Radio, which is affiliated with Maine Public Radio and National Public Radio. (R. at 14.167-68). He submitted an online application for his story, and after it was accepted, he spent about two months working with the Moth Radio producers on refining the story. (*Id.*) He then told the story onstage at the State Theater in Portland, and the story was later broadcast. (*Id.*)

In June 2004, Mr. Knoll sought treatment with Richard G. Doiron, Ph.D., a clinical psychologist in Portland, Maine, and continued to see Dr. Doiron twice a year for the next 10 years. (R. at 14.80). As far as the record shows, Mr. Knoll has not obtained treatment

3

for cognitive disorder, at least in recent years, from anyone besides Dr. Doiron. (R. at 36.8). Dr. Doiron's psychotherapy notes from September 29, 2005 through October 8, 2013 were admitted into evidence. (R. at 36.8). Dr. Doiron has noted multiple times that his diagnosis of Mr. Knoll for cognitive disorder NOS was secondary to, or a consequence of, toxic encephalopathy (fungal/mold exposure). (R. at 36.8). Dr. Doiron also treated Mr. Knoll for depression and stress. (R. at 36.8).

As required by statute, 5 M.R.S. § 17929(2)(B)(1), the MPERS has conducted periodic reviews of Mr. Knoll's case to determine whether he remains eligible for disability retirement benefits.[1] On July 5, 2006, July 29, 2008, and July 1, 2010, after reviewing Mr. Knoll's condition, MPERS approved Mr. Knoll's continuation of benefits, based on findings by MPERS that Mr. Knoll continued to be unable to engage in "substantially gainful activity" consistent with his training, education or experience and average final compensation. (R. at 36.3).

---

[1] Each year after an individual has been approved for the receipt of MPERS disability retirement benefits, the Executive Director may require examination to determine the individual's disability. 5 M.R.S. § 17929. In order to be eligible for continuing disability benefits, after two years the individual must show that the disability continues to render the individual unable to engage in substantially gainful activity "that is consistent with the person's training, education or experience and average final compensation." 5 M.R.S. § 17929(2)(B)(1). The determination that an individual is unable to engage in substantially gainful activity is made where MPERS finds that

> the person lacks the physical or mental capacity, due to the incapacity for which the person was awarded disability benefits, to perform or participate in any activity or activities, tasks or efforts that are or could be performed in such a manner as to generate remuneration in an amount which is consistent with average final compensation.

94-411 C.M.R. ch. 507, § 1.A. The Rule further defines "consistent with average final compensation" as "an amount that, on an annual basis, is at least 80% of the person's average final compensation at retirement" adjusted for cost of living adjustments. 94-411 C.M.R. ch. 507, § 1.A(1).

However, after a review that began in September, 2013, the Executive Director through a designee ("the EDD") issued a decision dated October 9, 2014 finding that Mr. Knoll had not shown that he continued to be unable to engage in substantial gainful activity. Mr. Knoll appealed this determination on October 27, 2014. (R. at 36.3).

A hearing was held before hearing officer Jonathan B. Huntington on May 20, 2015. (R. at 36.3). Mr. Knoll was represented by attorney Mark A. Cloutier and MPERS was represented by attorney Anedra C. Gregori. (R. at 36.3). Mr. Knoll testified, along with five witnesses on his behalf. (R. at 36.3).

At the hearing, Dr. Doiron testified that Mr. Knoll's cognitive disorder condition had not changed since 2006, although he also acknowledged that Mr. Knoll's cognitive function had improved over time. (R. at 14.68-70, 14.80-81, 36.8). Also, although he testified that Mr. Knoll was capable of working the job Mr. Knoll then had at SaviLinx, on the schedule Mr. Knoll then had, but no more. (R. at 14.74, 14.79), Dr. Doiron has not placed any limitations on Mr. Knoll's work capacity. (R. at 14.79). Dr. Doiron has not conducted any recent testing or assessment of Mr. Knoll's condition, but has relied on Mr. Knoll's reports to him of difficulty with energy and attention span as well as sensitivity to substances in the environment. (R. at 14.75, 14.79, 36.8).

Donna Maria Bordeaux also testified at the hearing. She has been married to Mr. Knoll for two years and did not know Mr. Knoll before the onset of his cognitive disorder. (R. at 36.8). Ms. Bordeaux and Mr. Knolls went through orientation at SaviLinx together. (R. at 36.9). Ms. Bordeaux testified that Mr. Knoll needed to have information repeated, that he took notes, and that he was slower than the rest of the group. (R. at 36.9). She testified that he became mentally overwhelmed and fatigued and left work early on several occasions. (R. at 36.9). He also left early when a scent "set him off" and he would have a

5

difficult time concentrating on the task at hand. (R. at 36.9). He was given his own cubicle, and then his own office to accommodate his difficulties with concentration, and he was permitted to work from home. (R. at 36.9).

At the May 20, 2015 hearing, she testified that when Mr. Knoll worked at SaviLinx, he was fatigued and confused with impatience, irritability, and difficulty finding words, and took frequent naps. (R. at 36.8). She further testified that he was not seeing a doctor regularly and he was not taking medication. (R. at 36.9). His treatment regimen was eating healthy, exercising every day and meditating. (R. at 36.9). She testified that his ability to function cognitively had worsened since they met. (R. at 36.9).

Barbara Safford-Garret, human resources manager at SaviLinx, testified at the May 20, 2015 hearing. (R. at 36.9). She testified that Mr. Knoll did not do his own paperwork associated with his trips to Hattiesburg because it was not his strength and it tended to overwhelm and fluster him. (R. at 36.9). He was paid $16.50 per hour at SaviLinx. (R. at 36.9). If he were able to work full time, then a full time job at SaviLinx would be offered to him. (R. at 36.9).

Martin J. Fitzpatrick, a vocational rehabilitation and job placement counselor, performed a vocational assessment and evaluation of employability of Mr. Knoll. (R. at 36.9). Fitzpatrick assumed, for the purposes of the report, that Mr. Knoll had the limitation stated in Dr. Doiron's note on July 9, 2013, that Mr. Knoll was able to work 2-3 hours per day, two days a week. (R. at 36.9). Based upon his evaluation, Fitzpatrick concluded that Mr. Knoll was not a suitable candidate for employment earning remuneration in the range of $57,148.53 and above. (R. at 36.9). On the other hand, although his report stated that Mr. Knoll was "not released to full-time work," (R. at 14.301), he also acknowledged that this

6

was based on his interpretation of Dr. Doiron's notes, (R. at 14.105), which, in turn, as noted above were based on Mr. Knoll's twice-yearly visits with Dr. Doiron.

At the hearing, the MPERS staff presented a vocational assessment from Daniel Casavant, who, like Mr. Fitzpatrick, has a background in vocational rehabilitation. (R. at 3.349-50). Mr. Casavant reached a conclusion different from Mr. Fitzpatrick, namely that Mr. Knoll was employable and qualified for a variety of jobs, including existing positions that provide compensation in line with Mr. Knoll's earnings history. (*Id.*)

The hearing record was closed by agreement on July 20, 2015, after additional documentary evidence was admitted. (R. at 36.3).

On September 3, 2015, the Medical Board advised the EDD that the evidence did not support a finding of continuing disability. (R. at 36.3). In its report to the EDD, the MPERS Medical Board noted the absence of any clinical data on any treatment of Mr. Knoll for cognitive disorder, NOS after October 2013. (R. at 36.9). The Board concluded that, because there was no objective evidence of a definable medical or neurological condition underlying the symptoms reported by Mr. Knoll, the medical records did not support the continued existence of cognitive disorder. (R. at 36.10). The Medical Board also concluded that research in the past twenty years has "failed to confirm a causal link between mold exposure and specific health conditions." (R. at 36.8). Therefore, the Medical Board found that Dr. Doiron's diagnosis of cognitive disorder NOS secondary to toxic encephalopathy, as a matter of medical science, was not supportable by the medical literature. (R. at 36.8).

On September 4, 2015, after review of the record, the Executive Director issued a decision on reconsideration affirming the decision of October 9, 2014. (R. at 36.4). The parties then filed briefs with the hearing officer, *(see* R. 28.1-29.6), who issued a recommended decision dated December 10, 2015. (R. at 30.3-30.14).

The recommended decision discussed the evidence in detail, noting, among other things, Dr. Doiron's "records did not reflect a sustained treatment approach directed at cognitive disorder, NOS." (R. at 30.8). The recommended decision noted that the last "plenary evaluation" of Mr. Knoll's cognitive function dated back to 2004, and that Dr. Doiron's testimony did not include any recent objective test, data or other empirical support for his testimony regarding Mr. Knoll's condition. (R. at 30.12). The recommended decision noted that "Dr. Doiron's testimony largely reiterates the Appellant's reports and is not as persuasive as information developed through an objective process." (R. at 30.11). The recommended decision observed as well that Dr. Doiron's testimony about Mr. Knoll's lack of capacity to supervise or manage others was inconsistent with evidence that Mr. Knoll was successfully supervising others in the course of his work at the call center. (R. at 30.12).

Similarly, the recommended decision analyzed the other evidence in detail and concluded:

> Acknowledging and understanding the Appellant's testimony about the energy required to perform at the necessary level and the association of an amount of stress and discomfort with these efforts, it is nonetheless evident that he has not demonstrated by a preponderance of the evidence that is current, relevant to the condition in issue, and persuasive, that he is unable to engage in substantially gainful activity by reason of active symptomatology of cognitive disorder, NOS.
> (R. at 30,14).

Petitioner submitted comments on the recommended decision December 21, 2015. (R. at 31.1-31.4). The hearing officer then filed a response to the comments along his recommended decision, unchanged from the original draft. (R. at 32.2-32.17). Thereafter, the recommended decision was forwarded to the Board, along with the Petitioner's request for a hearing. After hearing oral argument from the Petitioner and MPERS, the MPERS Board of Trustees in a Decision and Order dated May 12, 2016 adopted the recommended decision denying Petitioner's appeal. (R. at 36.2).

8

## II.     Issues on Appeal

In his brief, the Petitioner raises two issues:

- he argues that the evidence presented to MPERS was such as to compel the MPERS to decide that he had met his burden to prove that he is unable to engage in substantially gainful activity by reason of cognitive disorder, NOS. Petitioner's Brief at 25-29.

- he argues that evidence is so overwhelmingly in Petitioner's favor that the MPERS denial of benefits must be regarded as "biased and unjustifiable  given the evidentiary record as a whole. . ." Petitioner's Brief at 29.

Petitioner asks that the MPERS decision be set aside and the court determine that Petitioner "satisfied his burden of proof with regard to the 'substantially gainful activity' issue presented in this appeal," Petitioner's Brief at 30, which would result in a remand to MPERS with an order to grant Mr. Knoll's application.

The MPERS responds by contending that the record does not compel a decision in Petitioner's favor and that there is no evidence of bias, and it asks the court to affirm the MPERS decision and deny the appeal.

## III.     Standard of Review

The court's review of an action for administrative appeal is "deferential and limited." *Watts v. Bd. of Envtl. Prot.*, 2014 ME 91, ¶ 5, 97 A.3d 115. The court reviews adjudicatory decisions "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985. The court will "not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by

9

the evidence in the record." *Kroeger v. Department of Environmental Protection*, 2005 ME 50, ¶ 7, 870 A.2d 566.

The party seeking to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d 1114. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

In this case, the parties agree that the Petitioner has the burden of persuasion to prove by a preponderance of the evidence that he continues to be eligible for disability retirement benefits. *See Douglas v. Board of Trustees*, 669 A.2d 177, 179 (Me. 1996).

Because Petitioner has the burden of persuasion, the MPERS Board's decision to deny his claim for benefits based on his failure to meet his burden cannot be overturned unless the record compels the contrary conclusion that he did prove that he is entitled to benefits. *See Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 3, 985 A.2d 501 ("When an appellant had the burden of proof before the agency, and challenges an agency finding that it failed to meet that burden of proof, we will not overturn the agency fact-finding unless the appellant demonstrates that the administrative record compels the contrary findings that the appellant asserts should have been entered.")

Thus, the ultimate legal question in this appeal is whether the evidence in the record compelled MPERS to conclude that he had met his burden to show that he continued to be unable to engage in substantially gainful activity. However, Petitioner has also raised an issue of bias that must also be examined.

IV.     Analysis

Petitioner's two arguments against the MPERS decision would, if successful, result in different outcomes.   If successful, his argument on the merits—namely that the record evidence compelled a decision in his favor—would result in a remand with a directive to grant his application and award benefits.   His argument regarding bias, however, if successful, would result in a remand for a new hearing or some further proceeding.

This analysis will address the issue of bias first and then the issue of the merits.

*Bias*

In his comments on the hearing officer's recommended decision, Petitioner asserted that his evidence and his and his witnesses' testimony "were evaluated in an extraordinarily cynical and dismissive manner so as to micro-minimize  their individual and collective weight in the decision-making process." (R. at 31.1).  The comments also criticized the hearing officer's comments on shamanism as "reveal[ing] an unfortunate bias and inappropriate decisionmaking orientation which has infected the recommended disposition of this case."  (R. at 31.4).

The hearing officer's response rejected the contention that his recommended decision treated Petitioner's evidence dismissively, noting that the recommended decision adopted the testimony of Petitioner's witnesses to the extent it was based on personal observation. (R. at 32.3).  On the other hand, the response noted, "[t]estimony by any witness that consisted merely of repeating statements made by the Appellant to or in the presence of, while not discredited, is reiterative and lacks probative value in the context of the specific medical issue in this appeal."

Petitioner's brief on appeal expands on his original bias argument, contending that MPERS at all levels "must be strictly held accountable, especially where, as here, it appears

11

quite clearly that the System carries a profound financial interest in the disposition of this matter and a measure of control over the decision-making process." Petitioner's Brief at 27.

A claim of bias on the part of state administrative agency staff or a state board must be supported by "evidence sufficient to overcome a presumption that the fact-finders, as state administrators, acted in good faith. " *Friends of Maine's Mountains v. Bd. of Envtl. Prot.*, 2013 ME 25, ¶23, 61 A.3d 689, 698, *citing Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 142 (D. Me. 2009).

Petitioner's claim of bias and his new claim of a conflict of interest due to a "financial stake" are both lacking in specifics. His claim of bias on the part of the hearing officer, the EDD and the Board of Trustees appears to rest mainly or entirely on the fact that they disagree with his view of the evidence, rather than on any actual acts or statements evincing bias. His argument that MPERS is biased because it has a financial stake in whether Petitioner receives benefits is without merit. The logical extension of that argument is that agencies like the Social Security Administration and the Maine Department of Health and Human Services should not be making decisions on whether to grant benefits.

Accordingly, the court concludes that Petitioner has not made any cognizable showing of bias.

*The Merits of the MPERS Decision that Petitioner Had Not Met His Burden Of Persuasion*

As noted above, the ultimate question raised on the merits of Petitioner's appeal, in light of the allocation of the burden of persuasion, is whether the record evidence was such as to compel a decision in his favor.

Petitioner argues strenuously that there is no evidence in the record that he is capable of substantially gainful activity, but this argument misapprehends the burden of

12

proof. MPERS was not required to prove that Petitioner was capable of engaging in substantially gainful activity; rather, the burden was on him to prove that he was *not* capable of such activity.

Petitioner also emphasizes that he presented overwhelming evidence of his inability to engage in substantially gainful activity. But MPERS was not required to believe or credit all of Petitioner's evidence, nor was MPERS required to assign to his evidence the weight and significance that Petitioner believes it should have been assigned. The hearing officer's decision spells out why the hearing officer found the Petitioner's evidence insufficient to meet his burden:

- there had been no objective tests or evaluations of Petitioner's cognitive function since 2006

- the most recent medical evidence was almost two years old as of the hearing

- Dr. Doiron had not placed any limit on Petitioner's work capacity

- Dr. Doiron was not providing any particular treatment to Petitioner, but seemed to be simply reporting what Petitioner told him every six months

- Petitioner's other witnesses were largely reporting what Petitioner was telling them about his level of cognitive function

- Mr. Fitzpatrick's assessment relied heavily on Petitioner's self-reporting

- Petitioner was performing managerial and supervisory work at his job

- Petitioner was engaging in blogging, speaking, supervising others and other activities involving high levels of cognitive function

(R. at 32.10-16).

Based on this assessment of the evidence, the hearing officer concluded that the Petitioner's evidence was not sufficient to meet his burden of persuasion.

13

The Medical Board's report focused on similar shortcomings in the medical record, noting the absence of objective evidence corroborative of the Petitioner's continued inability to engage in substantially gainful activity.

Given the dearth in the record of recent, independent, objective evidence that Petitioner continued to be unable to engage in substantially gainful activity, the court cannot say that the record compels the conclusion that MPERS should have decided that he had met his burden of persuasion and granted his application for disability retirement benefits.

## V.    Conclusion

For the reasons given above, it is ORDERED AND ADJUDGED as follows:

Petitioner Paul W. Knoll's appeal is denied.  The decision of the Respondent Maine Public Employees Retirement System Board of Trustees to deny Petitioner's application for disability retirement benefits is affirmed.  Judgment is hereby entered for the Respondent Maine Public Employees Retirement System, with recoverable costs, if any, as the prevailing party.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this order by reference in the docket.

Dated October 14, 2016

_____
A. M. Horton, Justice

14