STATE OF MAINE                               SUPERIOR COURT
KENNEBEC, SS.                                Docket No. AP-15-64


EAST COAST MORTGAGE GROUP,                )
LLC and CHRISTOPHER M. BAIN,              )
                                          )
            Petitioners,                  )    **ORDER ON 80C APPEAL**
                                          )
     v.                                   )
                                          )
STATE OF MAINE BUREAU OF                   )
CONSUMER CREDIT PROTECTION,               )
                                          )
            Respondent.

Before the Court is an appeal of a determination by the Maine Bureau of Consumer Credit Protection (the "Bureau") finding that Mr. Bain ("Bain") and East Coast Mortgage Group, LLC ("East Coast") failed to fulfill their obligation to exercise good faith and fair dealing as required pursuant to of 9-A M.R.S. § 13-116(15).

I.     Background

Three complaints against Bain and East Coast were reviewed by the Bureau in the Administrative Order issued by the Bureau's Superintendent.

A.  Freeman Case

Mr. Freeman, a consumer, bid on a multi-unit building owned by HUD after the previous owners had been foreclosed upon. (R. at P-2). Freeman placed this bid based upon a letter from Bain stating that Mr. Freeman had "made application and has been pre-approved to purchase a home through East Coast .... This approval is based on information provided by the borrower and submitted to Shore Financial Mortgage." (R. at P-2). HUD accepted Mr.

1

Freeman's bid on May 26, 2011, conditioned upon closing within 45 days unless 15-day extensions were granted and/or purchased. (R. at P-2).

On June 2, 2011, Mr. Freeman paid Bain $600 for a required appraisal. (R. at P-2). Mr. Freeman completed a Uniform Application on June 23, 2011, requesting a loan of $76,997 – representing the purchase price and between $30,000 and $35,000 in repairs. (R. at P-2). The "Loan origination company" listed in the application is Envoy Mortgage, LTD. (R. at P-2). Both the initial appraisal and the revised appraisal were provided to Bain (on August 2, 2011 and August 12, 2011, respectively) after the initial HUD 45-day closing deadline had passed. (R. at P-2). Mr. Freeman was granted several extensions. (R. at P-2).

Thereafter, Bain realized that Mr. Freeman would not qualify for a loan of the full amount applied for. (R. at P-3). Bain contacted Mr. Freeman with revised numbers reflecting a reduction in the cost of repairs. (R. at P-3).

At this time Bain's employment at Envoy was "terminated voluntarily" after it was discovered that Bain had outside employment at East Coast, in violation of Bain's employment contract with Envoy that prohibited him from maintaining outside mortgage-related employment. (R. at P-3). Bain told Mr. Freeman that his relationship with Envoy ended "because they said they could do this loan. And didn't." (R. at P-3). Bain told Mr. Freeman that Bain delayed payment of the appraisal fee to Envoy because he believed that Envoy would be more likely to make the closing happen if the fee had not yet been paid and Envoy "had something to lose." (R. at P-3).

Mr. Freeman realized that it was too late to complete the purchase and start the rehab process before winter. (R. at P-3). Mr. Freeman asked Bain to reimburse the $600 appraisal fee he was charged in June and the $225 extension

2

fee paid to HUD. (R. at P-3). HUD returned Mr. Freeman's $500 deposit and forgave three extension payments, but assessed one payment of $225, which Bain has not refunded. (R. at P-3). It is unclear whether Bain refunded the $600 appraisal fee. (R. at P-3).

B. Roy Case

Ms. Roy began working with Bain in order to refinance a VA loan to either reduce payments or shorten the term. (R. at P-4). Bain had her apply for a HUD/FHA loan instead of a VA loan. (R. at P-4). The HUD/FHA loans are different from VA loans in a few ways. Primarily, the VA refinance loans do not require appraisals and the HUD/FHA loans do. (R. at P-4). Additionally, the interest rates would have been the same for the HUD/FHA loan and the VA loan, but the VA loan would have required nearly $2,000 more in origination fees and would have offered $2,500 less in "credit" than the HUD/FHA loan. (R. at P-4).

In this case, Ms. Roy paid for an appraisal, which set value at an amount that did not support the loan amount applied for through HUD/FHA. (R. at P-4). After the initial loan application did not go through, Bain and Ms. Roy applied for a VA loan, which did go through. (R. at P-4). Roy sought a finding of fault on Bain's behalf for failure to initially apply for the VA loan. (R. at P-4).

C. Reynolds Case

The final complaint made against Bain was made by the Reynolds. (R. at P-5). Both Mr. Reynolds and Mrs. Reynolds had recent bankruptcy discharges when they began working with Bain. (R. at P-5). Mr. Reynolds had defaulted on a mortgage held by Bank of America. (R. at P-5). The mortgage had been discharged in bankruptcy, but remained on the title. (R. at P-5). Mr. Reynolds

3

testified that he told Bain of the mortgage, but that he believed it to be a non-issue because of the bankruptcy discharge. (R. at P-6).

The Reynolds wanted to build a house. (R. at P-5). They had been denied a conventional mortgage, and had been referred to Bain to seek financing. (R. at P-5). Bain preapproved the Reynolds for a loan in the amount of $265,000. (R. at P-5). The Reynolds used the preapproval letter to convince a construction company to build the home. (R. at P-5). The Reynolds spent $10,000 of their own funds to decorate the home and to purchase appliances and fixtures. (R. at P-5). They spent another $5,000 for the deposit on the home and paid utility companies to hook up services to the structure. (R. at P-5).

After building had begun, Bank of America initiated a foreclosure action on the outstanding mortgage, and the foreclosure appeared on Mr. Reynolds' credit report. (R. at P-5). At some point after the filing of the foreclosure action, Bain discussed whether the loan could proceed with an intermediate broker or lender. (R. at P-6). Together they decided that the loan could proceed because the foreclosure action had not yet appeared on Mr. Reynolds' credit report. (R. at P-6). Once the foreclosure action appeared on Mr. Reynolds' credit report the loan was called off and the builders did not get paid. (R. at P-6). The builders ended up owning the property themselves and Mr. and Mrs. Reynolds lost the $10,482.19 that they had invested in the new home. (R. at P-6).

D. Procedural History

Upon receiving the above three complaints, the Bureau investigated. After investigation, the Bureau staff filed a Petition for Administrative Hearing. William N. Lund, Superintendent of the Bureau (the "Superintendent"), set hearing for September 23, 2015. The Superintendent acted as the hearing officer

4

and issued an administrative order finding that Petitioner East Coast Mortgage, through Bain, failed to use reasonable skill and diligence as required by 9-A M.R.S. § 10-303-A(1)(D); and Petitioner Bain individually failed to fulfill his obligation to exercise good faith and fair dealing in violation of 9-A M.R.S. § 13-116(15). The Superintendent put Bain's license and East Coast's license on probation with conditions that Bain and East Coast reimburse the Reynolds $5,241.10, reimburse Mr. Freeman $825, pay $1000 monetary penalty, and pay $1000 in hearing costs. Pursuant to the administrative order, Bain must also provide the Bureau with a spreadsheet identifying new customers, dates of applications, dates of payments of any kind, and a narrative regarding each application's status. Bain and East Coast filed an appeal of the Superintendent's Administrative Order.

II.    Standard

The court's review of an action for administrative appeal is "deferential and limited." *Watts v. Bd. of Envtl. Prot.*, 2014 ME 91, ¶ 5, 97 A.3d 115. The court only reviews adjudicatory decisions "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985. The court will "not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds, the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record." *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566.

The party attempting to vacate the agency's decision bears the burden of persuasion. *Town of Jay v. Androscoggin Energy, LLC*, 2003 ME 64, ¶ 10, 822 A.2d

5

1114. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham,* 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id.* Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Examiners of Psychologists,* 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *Bischoff v. Bd. of Trustees,* 661 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id.*

III.    Discussion

Bain and East Coast bring this administrative appeal claiming that the determination by the Bureau is invalid for a myriad of reasons including failure to notify Petitioners of the exact infractions that may have been violated prior to the hearing, for "Monday Morning Quarterback-ing", and for holding Bain and East Coast to too high a standard of care. Petitioners argue that much of what the Bureau determined was a failure to use reasonable skill and diligence was out of Bain's control.

In the Administrative Order, the Superintendent did not find a violation on Ms. Roy's complaint. The Superintendent held that it was not clear that Bain erred in first seeking the HUD/FHA loan. (R. at P-4). The Superintendent supported this determination by pointing out that Bain chose to pursue the least

6

expensive loan first, and that there is no evidence that Bain benefitted from the process.[1]

In both the Freeman case and the Reynolds case, the Superintendent found that East Coast Mortgage Group, through Bain, failed to use reasonable skill and diligence as required by 9-A M.R.S. § 10-303-A(1)(D). Furthermore, the Superintendent found that Bain, in his role as a mortgage loan originator, individually violated his obligation to exercise good faith and fair dealing, required pursuant to 9-A M.R.S. § 13-116(15). (R. at P-7). The Superintendent found that the Reynolds case "affected the most people and to the greatest degree" of the three cases in the disciplinary proceeding. (R. at P-5). The Administrative Order holds Bain 50% responsible for the error committed in the Reynolds case. (R. at P-7). While the Superintendent held that Mr. Reynolds' belief that he had no obligation on the mortgage post-bankruptcy discharge was a factor in the error, Bain was at fault for not inquiring about the mortgage listed on Mr. Reynolds' credit report with no note of discharge or transfer of property. (R. at P-7).

According to 9-A M.R.S. § 10-303-A(1)(D), "A loan broker shall, in addition to duties imposed by other statutes or at common law: ... Use reasonable skill, care and diligence." Additionally, 9-A M.R.S. § 13-116(15) imposes a the duty of "Good faith and fair dealing" making it a legal violation to "fail to comply with the duties of good faith and fair dealing as required in section 10-303-A". The Court's role in interpreting statute is to "to give effect to

---

[1] The Hearing Officer noted that while there is not clear evidence that Bain erred in first seeking the HUD/FHA loan, there is evidence in the record that Bain made knowing misrepresentations in his dealings with Ms. Roy that display a pattern of knowing misrepresentations. (R. at P-5).

7

the legislative intent as indicated by the statute's plain language, and [the Court] examine[s] other indicia of legislative intent, such as its legislative history, only when the plain language is ambiguous." *Berube v. Rust Eng'g*, 668 A.2d 875, 877 (ME. 1995).

In this case, the plain language of the statute requires the loan broker to use reasonable skill, care and diligence. 9-A M.R.S. § 10-303-A(1)(D). According to Merriam-Webster Dictionary, skill is defined as "the ability to use one's knowledge effectively and readily in execution or performance"; care is defined as "effort made to do something correctly, safely, or without causing damage"; and diligence as "persevering application". Using the ordinary definitions of "skill", "care", and "diligence", the Court finds that Bain and East Coast's failure to properly review the credit report in the Reynolds' case and failure to order the appraisal and honestly communicate in the Freeman case provide support for a finding of violation of 9-A M.R.S. § 10-303-A(1)(D). The evidence cited to in the Administrative Order provides sufficient basis for a determination that Bain and East Coast failed to fulfill their statutory obligations. The Superintendent did not impose so stringent of a standard of care as to constitute an abuse of discretion, nor does the evidence in the record compel a finding that the errors found by the Superintendent were out of the control of Bain and East Coast.

IV.    Conclusion

Petitioner has not met his burden of showing that the Bureau's determination "violates the Constitution or statutes; exceeds, the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by

8

the evidence in the record." *Kroeger*, 2005 ME 50, ¶ 7. Therefore, the Court affirms the finding of the Agency.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE: 12/8/16

Michaela Murphy
Justice, Superior Court